**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARK L. JUSTMAN, individually and as executor of the Estate of Karen A. Justman** | : : : : | **CIVIL ACTION** |
| v. | : : | NO. 24-4107 |
| **ACCENTURE LLP, PRUDENTIAL INSURANCE COMPANY OF AMERICA** | : : : : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                                                **October 30, 2024**

An employer offered its employees an opportunity to participate in a group life insurance and accidental death and dismemberment insurance plan allowing the employee's beneficiary to recover benefits for a defined accidental loss, including death, resulting from a defined accidental injury but not a defined sickness. The employer hired an insurer to administer the plan and provide coverage. The employer told its employees it delegated authority over claims processing, claim investigation, claim control, and the daily administration of the group plan to the insurer.

We today address a husband's claim for insurance proceeds from his deceased wife's former employer and the insurer administering the group plan following his wife passing away a few days after eating raw oysters. The insurer with the delegated authority denied his claim under the plan's defined "Accidental Injury" and "Sickness" terms. The husband sues the insurer as the claims administrator but he also claims the former employer must award the accidental injury insurance benefits regardless of its disclosed delegation of claims administration to the insurer. We dismiss the husband's claims against his deceased wife's employer without prejudice to plead facts and legal theories allowing him to sue both the insurer who denied the benefits as well as the employer who delegated these determinations to the insurer.

I. **Alleged Facts**

Karen A. Justman worked for Accenture LLP before and during August 2021.[1] She enrolled in a group life insurance plan offered by Accenture.[2] This group life insurance plan included "basic" accidental life insurance coverage equal to Ms. Justman's base salary and an additional "optional" accidental death and dismemberment coverage of three times her base salary.[3] Ms. Justman purchased the optional coverage by paying the premiums through payroll deductions.[4] Ms. Justman designated her husband Mark Justman as the beneficiary of both the "basic" and "optional" coverages.[5]

*Accenture's Summary Plan Descriptions.*

Accenture prepared a summary plan description of its life insurance and accidental death and dismemberment plans in 2020 and 2021.[6] Mr. Justman alleges Accenture provided the 2020 summary plan description to Ms. Justman but it "may or may not have" provided the 2021 summary plan description to her.[7] The 2020 and 2021 summary plan descriptions identified Accenture as the Plan Administrator.[8] The 2020 summary plan description designated MetLife as the Claims Administrator and the 2021 summary plan description designated Prudential Insurance Company of America as the Claims Administrator.[9] Both the 2020 and 2021 summary plan descriptions provide a section on "How the Plans Work" which provide, in relevant part: "The Basic Life/Accidental Death and Dismemberment Insurance, the Optional Life Insurance Plan and the Optional AD&D Insurance Plan pay benefits to your beneficiary(ies) if you die or are seriously injured while covered by the plans. If you die as a result of an accident, *as determined by the Claims Administrator*, your beneficiary will receive Optional AD&D benefits in addition to the benefits provided under the Basic Life/AD&D and the Optional Life Insurance Plan."[10]

*The Prudential Plan of insurance under the Group Policy.*

The group contract between Prudential and Accenture provides insurance benefits for "insured employees."[11] Claimants must give Prudential written notice of a claim and documentation of loss.[12] Benefits are paid when Prudential received written proof of the loss with any documentation it requests.[13]

Prudential's basic and optional accidental death and dismemberment coverage pays benefits for "Accidental Loss . . . [which] must result directly from an Accidental Injury and no other cause."[14] Prudential defines "Accidental Loss" to include "loss of life."[15]  It defines "Accidental Injury" as "physical harm or damage to the body that is a direct result of an Accident and is not related to any other cause."[16] It defines "Accident" as "an act or event which: (i) is unforeseen, unexpected and unanticipated; (ii) is definite as to time and place; (iii) is not a Sickness; and (iv) occurs while you are a Covered Person."[17] It defines "Sickness" as "[a]ny disorder of the body or mind of a Covered Person, but not an injury[.]"[18]

*Prudential denied Mr. Justman's claim for Accidental Group Life Benefits.*

Ms. Justman ate raw oysters at a restaurant on August 21, 2021, became ill, required hospitalization, and subsequently died on August 28, 2021 from septic shock caused by vibrio vulnificus bacteremia. Vibrio vulnificus bacteremia is a pathogen acquired by eating raw or undercooked shellfish, particularly oysters, and is an infection putting those with compromised livers at high risk for serious complications including death.[19]

Mr. Justman submitted a claim to Prudential for both basic and optional accidental group life benefits as the beneficiary of Ms. Justman's policy.[20] Prudential denied the claim on April 25, 2022, concluding Ms. Justman died of a "medical illness and/or sickness" and not an "Accidental

Injury . . . as the direct result of an Accident."[21] Prudential upheld its decision on appeal on December 28, 2022.[22]

## II. Analysis

Mr. Justman sued both Prudential and Accenture for the denial of benefits under section 1132(a)(1)(B) of ERISA. Although far from clear, Mr. Justman also appears to possibly assert a claim against Accenture for breach of a fiduciary duty to him. Mr. Justman seeks the full payment of benefits under the Plan. Accenture now moves to dismiss the claims against it.[23]

### A. Mr. Justman does not state a claim against Accenture for denial of benefits under ERISA section 1132(a)(1)(B).

Mr. Justman sued Prudential under ERISA section 1132(a)(1)(B) for the wrongful denial of benefits. He alleges insurer Prudential, as the Claims Administrator, wrongfully denied him benefits under Ms. Justman's life and accidental death and dismemberment policies.[24] Although he concedes Accenture delegated claims administration to Prudential, he alleges Accenture "remains ultimately responsible" for claims handling and it "should have . . . approved" his claim. Mr. Justman brings this claim against Accenture for the wrongful denial of benefits under section 1132(a)(1)(B).

Congress, through ERISA, provides a "participant or beneficiary" with a remedy "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[25] To state a claim for benefits, Mr. Justman must allege he has a right to benefits legally enforceable against the plan and the administrator improperly denied the benefits.[26]

Accenture argues we must dismiss Mr. Justman's claim for benefits against it with prejudice because it is not the proper defendant because Prudential, as the delegated claims administrator, is responsible for the benefit. Accenture makes three arguments to support its Rule

4

12(b)(6) motion: (1) Prudential's Group Policy of insurance constitutes "the plan" for purposes of determining whether benefits are payable and the Group Policy "make[s] clear" Prudential administers claims and pays benefits, not Accenture; (2) our Court of Appeals's decision in *Evans v. Employee Benefit Plan, Camp Dresser & McKee, Inc.* forecloses Mr. Justman's claim for benefits;[27] and (3) to the extent Mr. Justman argues the 2020 and 2021 summary plan descriptions are a part of the Group Policy and should be considered the "plan," his argument is foreclosed by the Supreme Court's decision in *CIGNA v. Amara.*[28]

We address the first and third arguments together. Accenture first argues Prudential's Group Policy, on its face, makes clear Prudential administers claims and pays benefits. Accenture does not cite language in the Group Policy making Prudential the claims administrator. We see nothing in the Group Plan "making clear" Prudential administers claims other than the obvious fact Prudential, through the Group Policy, provides insurance under the Group Contract between it and Accenture.

Accenture relatedly argues to the extent Mr. Justman relies on the 2020 and 2021 summary plan descriptions, they are not, as a matter of law, the terms of the "plan" under the Supreme Court's 2011 guidance in *CIGNA v. Amara.* In *Amara*, the Supreme Court instructed over thirteen years ago, summary plan descriptions are communications to participants *about* the plan but do not constitute the *terms* of the plan for purposes of a claim for the denial of benefits under section 1132(a)(1)(B).[29] Accenture asserts Prudential's Group Policy contract of insurance is the plan for purposes of ERISA benefits, *not* the summary plan descriptions.[30] And Prudential determines when benefits for "Accidental Loss" are paid under the Group Policy.

Mr. Justman did not respond to Accenture's argument under *Amara* the summary plan description is not the "plan" for purposes of a claim for benefits under section 1132(a)(1)(B) even

though his only argument against dismissal of his claim against Accenture is based on the language of the summary plan description.[31] And he does not allege the summary plan description is the plan under which he seeks benefits; he alleges only Accenture is responsible for the "provision of accidental life insurance benefits as presented in its Life Insurance Plan" (not defined) while at the same time alleging Prudential "insures the group life benefits provided by its Group Policy[.]"[32] Mr. Justman instead argues Accenture expressly retained or shared with Prudential authority to make benefit determinations and Accenture did not delegate exclusive authority to Prudential to make claims decisions, allowing Accenture to pay benefits even if Prudential denied benefits. He cites the Accenture summary plan descriptions: "Benefits under the Plans will be paid only if the Plan Administrator and/or Claims Administrator decide in its discretion that the claimant is entitled to them."[33] But under our Supreme Court's direction in *Amara*, the Accenture summary plan description is not the "plan" for purposes of a section 1132(a)(1)(B) claim to recover benefits due to him under the terms of his plan. He does not plead otherwise.

Accenture also argues the decision of our Court of Appeals in *Evans* fifteen years ago resolves the proper defendant issue. Ms. Evans participated in a long term disability insurance plan through her employment. Metropolitan Life Insurance Company administered the disability insurance plan and denied Ms. Evans benefits. Ms. Evans sued both her employer and MetLife for the denial of benefits under section 1132(a)(1)(B). The employer moved for summary judgment, arguing it is not a proper defendant because it delegated to MetLife the discretion to determine eligibility for benefits.[34] Ms. Evans disagreed, arguing her employer as Plan Administrator shared discretionary authority with MetLife to make claims decisions, citing two sections of the MetLife Plan: (1) "You have the right to have the Plan administrator review and reconsider your claim"; and (2) ""[i]n carrying out their respective responsibilities under the Plan, the Plan administrator

6

Case 2:24-cv-04107-MAK   Document 20   Filed 10/30/24   Page 7 of 18

and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan."[35]

Our Court of Appeals found the Plan's language made clear MetLife, not the employer, had discretion to interpret the contract's terms and the employer is not responsible for administering benefits or determining eligibility.[36] The court instructed the exercise of control over the administration of benefits is "the defining feature of the proper defendant" under section 1132(a)(1)(B).[37] The court rejected Ms. Evans's argument the identification of the employer as Plan Administrator in the insurance contract showed the employer had discretion to determine eligibility and, even though the contract did not specifically give MetLife exclusive discretion, Ms. Evans did not present evidence her employer had a role in benefits determination.[38] To the contrary, the court found persuasive Ms. Evans directed communications about her disability benefits to MetLife and not her employer.[39]

Mr. Justman responds Accenture's reliance on *Evans* is distinguishable because the summary plan description in *Evans* did not contain the language—"Benefits under the Plans will be paid only if the Plan Administrator **and/or** Claims Administrator decide in its discretion that the claimant is entitled to them"—contained in the Accenture 2021 summary plan description. Mr. Justman asserts the employer Plan Administrator in *Evans* did not reserve the authority to determine entitlement to benefits (unlike the language in Accenture's summary plan description).[40]

We disagree. The summary plan description in the *Evans* case contained several similar provisions present in the Accenture summary plan description. The summary plan description in *Evans* gave MetLife "in its discretion . . . authority to interpret the terms, conditions, and provisions of the entire contract"; the employer is identified as the Plan Administrator; and the summary plan

7

description contained a section entitled "Discretionary Authority of the Plan Administrator and Other Plan Fiduciaries" providing:

> "In carrying out their respective responsibilities under the Plan [defined as "that part of the Employer's plan of employee benefits that is insured by MetLife"], ***the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan***. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious."[41]

This language in the summary plan description presented in *Evans* is similar to the language Mr. Justman argues is distinguishable in the Accenture summary plan description: both the *Evans* summary plan description and the Accenture summary plan description gives the Plan Administrator discretion to determine benefits. We conclude the language in *Evans* is similar to the language in Accenture's summary plan description and disagree with Mr. Justman the two summary plan descriptions differ making *Evans* distinguishable even if we considered the summary plan descriptions as part of the Plan's terms.

Mr. Justman also argues our Court of Appeals considered the issues in *Evans* at the summary judgment stage, not the motion to dismiss stage, and he should have the opportunity to take discovery on Accenture's role in making benefit determinations. This argument is more persuasive but does not carry the day for Mr. Justman given his sworn allegations.

Mr. Justman: (1) alleges Accenture is a fiduciary subject to a strict duty to administer the plan solely in the interests of and for the benefit of its participants; (2) concedes Accenture delegated claims processing to Prudential but maintains Accenture remains "ultimately responsible" for administration and claims handling "under the Plan"; (3) alleges "either Accenture's [summary plan descriptions] are inaccurate and misleading, or [his] claim for accidental life insurance benefits should have been approved by Accenture"; and (4) concludes

8

"[i]n either case, Accenture is responsible for the provision of accidental life insurance benefits as presented in its Life Insurance Plan."[42]

But Mr. Justman does not allege how "Accenture remains ultimately responsible for the administration of benefits and claims handling under the Plan."[43] Even accepting Mr. Justman's argument based on one line excised from the full paragraph of the 2021 summary plan description delegating claims administration to Prudential, he does not allege facts allowing us to plausibly infer Accenture exercised control over the administration of claims by its employees. The documents he attached to the Complaint—the Prudential Group Policy, Prudential's denial letter, and Prudential's appeal letter—all show to the contrary confirming Prudential and not Accenture made the benefits decision Mr. Justman now challenges.[44]

Mr. Justman does not allege facts Accenture controlled the claims administration of benefits and does not plausibly allege an ERISA claim for wrongful denial of benefits against Accenture. We dismiss Mr. Justman's section 1132(a)(1)(B) claim against Accenture with leave to amend.

### B. Mr. Justman does not state a claim against Accenture for breach of fiduciary duty.

We liberally construe Mr. Justman referencing an ERISA breach of fiduciary duty claim against Accenture but it is not specifically pleaded in the Complaint. Mr. Justman alleges Accenture, as the Plan Administrator, had a duty to furnish Ms. Justman with a summary plan description which it "may or may not" have provided to her; Accenture is a fiduciary with a duty to administer the plan solely in the interests of participants and beneficiaries of the plan; Accenture's 2020 and 2021 summary plan descriptions are "inaccurate and misleading"; and Accenture should have approved Mr. Justman's claims for benefits despite its delegation of claims administration to Prudential. These are an amalgam of ERISA claims Mr. Justman attempts to

9

package as a breach of fiduciary duty claim, although he does not cite the section(s) of ERISA creating a cause of action for breach of fiduciary duty.[45]

### 1. Mr. Justman does not plead failure to furnish the 2021 summary plan description.

Congress, through ERISA section 1024(b)(1), requires an "administrator of any employee benefit plan" to "furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description" within a specified time period.[46] Congress in section 1024(b)(4) of ERISA requires an "administrator . . . , upon written request of any participant or beneficiary" to "furnish a copy of the latest updated summary plan description[.]"[47]

The civil enforcement provision in section 1132(c) imposes penalties upon an administrator who fails or refuses to supply summary plan descriptions. A plaintiff, to state a claim under section 1132(c), must allege (1) he is a plan participant or beneficiary; (2) he made a request for information required by ERISA's disclosure requirements; and (3) the plan administrator failed to provide the requested documents.[48]

Mr. Justman does not allege Accenture failed to provide the 2021 summary plan description to Ms. Justman, alleging only Accenture "may or may not have" done so, and does not allege either Mr. or Ms. Justman requested, but did not receive, the 2021 summary plan description. Mr. Justman does not plausibly plead a failure to furnish the 2021 summary plan description.

### 2. Mr. Justman does not plead a breach of fiduciary duty claim under section 1132(a)(2).

Congress imposes certain obligations on plan fiduciaries.[49] A fiduciary "shall discharge," consistent with the "prudent man" standard of care, duties "with respect to a plan solely in the interest of participants and beneficiaries" and "for the exclusive purpose of providing benefits to

participants and their beneficiaries" and "defraying reasonable expenses of administering a plan."[50]

If a plan fiduciary breaches a responsibility, obligation, or duty imposed on him, the fiduciary "shall be personally liable to make *good to such plan* any losses *to the plan* resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."[51]

Congress in ERISA section 1132(a)(2) allows a plan participant or beneficiary to sue a fiduciary who breached his duties.[52] Mr. Justman, to state a claim for an ERISA breach of fiduciary duty claim, must allege: (1) a plan fiduciary; (2) breached an ERISA-imposed duty; (3) causing a loss *to the plan*.[53] He does not allege a breach of fiduciary duty under section 1132(a)(2). He does not allege which ERISA-imposed fiduciary duty Accenture breached and there is no allegation of loss to the Plan.

### 3. Mr. Justman does not plead a breach of fiduciary duty for misrepresentations under section 1132(a)(3).

Congress also allows an ERISA plan participant or beneficiary to "(A) enjoin any act or practice which violates any provision of [the statute] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."[54] This is a "catchall" provision providing "appropriate equitable relief for injuries caused by violations" of ERISA section 1132 "does not elsewhere adequately remedy."[55]

Mr. Justman suggests (but did not plead) he seeks equitable relief, which he argues may include money damages, under section 1132(a)(3). But, again, he does not allege the fiduciary duty Accenture allegedly breached. He alleges Accenture's summary plan descriptions are

11

"inaccurate and misleading."[56] Our Court of Appeals has also long-recognized an ERISA "fiduciary may not, in the performance of [its] duties, 'materially mislead those to whom the duties of loyalty and prudence are owed.'"[57] A fiduciary's duty "encompasses 'not only a negative duty not to misinform, but also an affirmative duty to inform when the [fiduciary] knows that silence might by harmful.'"[58]

Mr. Justman, to state a claim based on a misrepresentation, must allege: (1) Accenture acted in a fiduciary capacity; (2) Accenture made affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries; (3) the misrepresentations or inadequate disclosure are material; and (4) detrimental reliance on the misrepresentation or inadequate disclosure.[59] This is essentially an equitable estoppel claim enforced through section 1132(a)(3).

Mr. Justman does not plausibly state a claim for breach of fiduciary duty. Accenture moves to dismiss the breach of fiduciary duty claim arguing Mr. Justman did not allege Accenture acted in bad faith, actively concealed a change in the summary plan descriptions, or harm from a misrepresentation. Mr. Justman did not respond to this argument. He instead argues (but again did not plead under oath) he is entitled to money damages in the form of surcharge for a breach of fiduciary duty. He does not allege a surcharge in his Complaint.

But even if he alleged such a remedy, he did not allege the elements of a misrepresentation claim (assuming he intended to bring such a claim). Mr. Justman does not allege Accenture, acting in a fiduciary capacity, made affirmative misrepresentations or failed to adequately inform Ms. Justman or him, the misrepresentations or inadequate disclosure are material, and detrimental reliance on the misrepresentation or inadequate disclosure. He alleges only Accenture, as Plan Administrator, is a fiduciary; ERISA required Accenture to furnish Mrs. Justman with a summary plan description; Accenture furnished the 2020 summary plan description and "may or may not

have" provided the 2021 summary plan description to her;[60] and either "Accenture's [summary plan descriptions] are inaccurate and misleading, or [Mr. Justman's] claim for accidental life insurance benefits should have been approved by Accenture."[61]

We grant Accenture's motion to dismiss without prejudice to allow Mr. Justman to amend his Complaint if he can do so consistent with the facts and the law.

### III. Conclusion

We grant Accenture's motion to dismiss without prejudice to Mr. Justman timely amending to plead facts allowing us to plausibly infer a claim within our limited jurisdiction against his wife's former employer.

---

[1] ECF 1 ¶ 8.

[2] *Id.* ¶ 14. There is no dispute Accenture's group life insurance plan is an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. § 1001, *et seq.* ERISA defines the term "employee welfare benefit plan" as "any plan, fund, or program which [is] … established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment …" *Id.* § 1002(1).

[3] ECF 1 ¶ 17. Ms. Justman's basic accidental life insurance coverage equaled her base salary of $178,000 and the optional accidental death and dismemberment coverage three times her base salary amounted to $534,000. *Id.*

[4] *Id.*

[5] *Id.* ¶ 18. Mark Justman is the executor of his wife's estate.

[6] Mr. Justman attached exhibits to his Complaint including the Prudential Insurance Company of America's Group Policy of insurance, Accenture's 2020 summary plan description, Accenture's 2021 summary plan description, and Prudential's denial of benefits letters. *See* ECF 1-3, 1-5, 1-6, 1-7, 1-8. We may consider documents attached to the complaint when considering a motion to dismiss under Rule 12(b)(6). *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 290 (3d Cir. 2014).

---

[7] ECF 1 ¶ 34. Congress through ERISA requires a plan administrator to provide a summary plan description of an employee benefit plan to participants and beneficiaries of a plan containing certain prescribed information. 29 U.S.C. § 1022.

[8] *Id.* ¶¶ 19-20, ECF 1-5 at 4, ECF 1-6 at 4 (using the pagination assigned by the CM/ECF docketing system).

[9] ECF 1 ¶ 29, ECF 1-5 at 4, ECF 1-6 at 4. The 2020 summary plan description provides:

> The Plans are administered by Accenture or its designated representative. Accenture is responsible for formulating and carrying out all rules and regulations necessary to administer the Plan and has the sole discretionary authority to make decisions regarding eligibility of employees and participants in each Plan. ***Accenture has delegated to one or more Claims Administrators the discretionary authority to make decisions regarding the interpretation or application of Plan provisions, and the discretionary authority to determine all questions, including factual determinations, as to the rights and benefits of employees and participants under each Plan. Benefits under the Plans will be paid only if the Plan Administrator and/or Claims Administrator decide in its discretion that the claimant is entitled to them.*** Any decision made by Accenture or a Claims Administrator in good faith is final and binding on all persons. The Claims Administrator for both Plans, MetLife, is also identified in the General Information Summary.

ECF 1-5 at 4 (emphasis added).

The 2021 summary plan description is identical to the 2020 version with the exception of the substitution of Prudential for MetLife as the Claims Administrator and the addition of the following paragraph:

> The Claims Administrator for both Plans is the Prudential Insurance Company of America, and is also identified in the General Information Summary. ***The Plan Administrator has delegated authority to the Prudential Insurance Company of America to provide claim processing, claim investigation, claim control, and the daily administration of the plan. All benefits and coverages described in this summary are subject to the terms of the insurance policies under which benefits are provided. If there*** is any conflict between this summary and the insurance policies, ***the insurance policies govern***.

ECF 1-6 at 4 (emphasis added).

[10] ECF 1-5 at 6; ECF 1-6 at 6 (emphasis added).

[11] ECF 1-3 at 2 (using the pagination assigned by the CM/ECF docketing system).

[12] *Id.* at 36.

14

[13] *Id.*

[14] *Id.* at 12, 18.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.* at 35.

[19] ECF 1 ¶ 10; www.cdc.gov/vibrio/about/index.html. Ms. Justman received medical treatment for liver disease in the year before her passing. *Id.* ¶ 13.

[20] *Id.* ¶ 21.

[21] *Id.* ¶ 22; ECF 1-7 at 3 (using the pagination assigned by the CM/ECF docketing system).

[22] ECF 1 ¶ 23; ECF 1-8.

[23] The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than

conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[24] Prudential answered the Complaint. ECF 10.

[25] 29 U.S.C. § 1132(a)(1)(B).

[26] *Staropoli v. Metropolitan Life Ins. Co.*, 465 F. Supp. 3d 501, 510 (E.D. Pa. 2020) (quoting *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012)).

[27] 311 F. App'x 556 (3d Cir. 2009).

[28] *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011).

[29] *Id.* In *Amara*, the Supreme Court "made clear that the statements in a summary plan description 'communicat[e] with beneficiaries *about* the plan, but … do not themselves constitute the *terms* of the plan." *U.S. Airways, Inc. v. McCutchen*, 569 U.S. 88, 92, n.1 (2013) (quoting *Amara*).

[30] ECF 1-3.

[31] Accenture's contention Prudential's Group Policy is the "plan" for purposes of a claim for benefits under section 1132(a)(1)(B) distinguishes this case from *McLaughlin v. Bd. of Trustees of Nat'l Elevator Industry Health Ben. Plan*, 686 F. App'x 118 (3d Cir. 2017). In *McLaughlin*, our Court of Appeals noted the District Court and the Defendant benefit plan cited to the language of the summary plan description as the "Plan" language notwithstanding *Amara*. *Id.* at 123 n.3 (citing *US Airways, Inc.*). In *US Airways*, the Supreme Court, citing *Amara*, reminded us "[w]e have made clear that the statements in a summary plan description 'communicat[e] with beneficiaries *about* the plan, but . . . do not themselves constitute the *terms* of the plan.' . . . Nonetheless, the parties litigated this case, and both lower courts decided it, based solely on the language [of the summary plan description]. . . . Only in this Court, in response to a request from the Solicitor General, did the plan itself come to light. . . . That is too late to affect what happens here: Because everyone in this case has treated the language from the summary description as though it came from the plan, we do so as well." *US Airways*, 469 U.S. at 92, n.1 (citations omitted).

[32] ECF 1 ¶¶ 26, 40.

[33] ECF 1-6 at 4.

[34] The MetLife certificate of insurance stated: "MetLife in its discretion has authority to interpret the terms, conditions, and provisions of the entire contract." *Evans*, 311 F. App'x at 558.

[35] *Id.*

16

[36] *Id.* at 558–59.

[37] *Id.* at 558.

[38] *Id.* at 558–59.

[39] *Id.* at 559.

[40] ECF 16-1 at 4 (citing *Evans*, 311 F. App'x at 558).

[41] *Evans*, 311 F. App'x at 558. *See also Evans v. Employee Benefit Plan, Camp Dresser & McKee, Inc.*, No. 07-3552 (D.N.J.) (ECF 88-2 ¶ 8; ECF 88-5 at 1, 4, 27–28) (using the pagination assigned by the CM/ECF docketing system) (emphasis added). We obtained the full summary plan description in *Evans* by accessing it through the employer's motion for summary judgment filed on Pacer.

[42] ECF 1 ¶¶ 37–40. Paragraphs 33 through 36 appear to possibly assert a breach of fiduciary duty claim against Accenture.

[43] ECF 1 ¶ 38.

[44] *See* ECF 1-3, 1-7, 1-8.

[45] Mr. Justman's response attempts to clarify his breach of fiduciary duty claim by arguing he may be awarded money damages in the form of surcharge for Accenture's alleged breach of fiduciary duty under section 502(a)(e) of ERISA. But he did not plead this theory. Mr. Justman cannot amend his pleading through his brief in opposition to the motion to dismiss. *Frederico v. Home Depot*, 507 F.3d 188, 201–02 (3d Cir. 2007) (citations omitted).

[46] 29 U.S.C. § 1024(b)(1)(A).

[47] *Id.* § 1024(b)(4).

[48] *Id.* § 1132(c)(1)(B).

[49] *Id.* § 1104(a).

[50] *Id.*

[51] *Id*. § 1109(a) (emphasis added).

[52] *Id.* § 1132(a)(2).

[53] *Mator v. Wesco Distrib., Inc.*, 102 F.4th 172, 184 (3d Cir. 2024).

[54] 29 U.S.C. § 1132(a)(3).

---

[55] *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).

[56] ECF 1 ¶ 39.

[57] *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 227–28 (3d Cir. 2009) (quoting *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 492 (3d Cir. 2000)).

[58] *Id.* at 228 (quoting *Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993)).

[59] *Salvucci v. Glenmede Corp.*, 657 F. Supp. 3d 677, 684 (E.D. Pa. 2023).

[60] We also cannot determine whether Mr. Justman attempts to bring a claim for failure by Accenture, as Plan Administrator, to furnish the 2021 summary plan description to Ms. Justman.

[61] ECF 1 ¶¶ 33–39.